IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| IN RE: SUBPOENA TO HOSIDEN AMERICA ) | Case Number 07-cv-6458 |
| CORPORATION ) | |
| ) | Judge Ruben Castillo |
| HONEYWELL INTERNATIONAL, INC., et al., ) | |
| ) | Magistrate Judge Schenkier |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| APPLE COMPUTER, et al., ) | |
| ) | |
| Defendants ) | |

**FUJIFILM CORPORATION'S REPLY TO HOSIDEN AMERICA CORPORATION'S RESPONSE IN OPPOSITION TO AMENDED MOTION TO ENFORCE RULE 45 SUBPOENA AGAINST NON-PARTY HOSIDEN AMERICA CORPORATION**

**Introduction**

Movant FUJIFILM Corporation ("Fuji"), by its undersigned counsel, hereby respectfully submits this Reply To Hosiden America Corporation's Response In Opposition To Amended Motion To Enforce Rule 45 Subpoena Against Non-Party Hosiden America and the annexed Declaration of Ian G. DiBernardo, Esq., and exhibit annexed thereto. ("DiBernardo Dec.").

The Subpoena Duces Tecum pursuant to Fed.R.Civ.P. 45, dated September 28, 2007, that Fuji served upon Hosiden America (the "Subpoena") is reasonable, not overly burdensome or unduly broad. The requests are limited in time and subject matter. The requested documents are relevant, material, and reasonably calculated to lead to the discovery of admissible evidence in Honeywell International Inc., et al., v. Apple Computer, Inc., et al., (C.A. No. 04-1338 (consolidated)), which is currently pending in the United State District Court for the District of Delaware (the "Underlying Case"). That responsive documents no longer exist (if that is indeed

1

the case) would be relevant to Fuji's defense of laches in the Underlying Case. The requested documents are in Hosiden America's control, even if in the possession of its parent Hosiden Corporation. Thus, Hosiden America should be ordered to conduct a thorough search for responsive documents in its and its parent's possessions and the requested documents should be produced without further delay. If responsive documents no longer exist, Hosiden America should attest to such lack of documents from a person with first-hand knowledge of the search for responsive documents in a form that will be admissible in the Underlying Case.

## Argument

A. **Hosiden America has not met its Production Burden**

In its Response in Opposition to Amended Motion to Enforce Rule 45 Subpoena Against Non-Party Hosiden America ("Hosiden Response"),[1] Hosiden America claims that Hosiden America has complied with the Subpoena by submitting the declaration of Mr. Socihiro Rai. Hosiden Response, p. 1.

In its Response, Hosiden America disingenuously states that Hosiden America filed a declaration in which Mr. Socihiro Rai "testified that both Hosiden America and Hosiden Corporation do not have any documents that are responsive to the October Subpoena" and have thus met their production burden. Hosiden Response, p. 4. This is not the case. Mr. Rai did not testify to anything but rather only put forth statements in an uncorroborated declaration. Furthermore, Mr. Rai did not attest to the fact that Hosiden Corporation had no responsive

---

[1] Fuji's Memorandum of Law and this Reply are both in Support of Fuji's Amended Motion to Enforce Rule 45 Subpoena Against Non-Party Hosiden America. Hosiden America correctly notes that Fuji's Memorandum of Law in Support of its Amended Motion to Enforce Rule 45 Subpoena against Hosiden America filed December 4, 2007 ("Fuji's Memorandum of Law"; Dkt # 22) was unintentionally identified as being in support of Fuji's originally filed motion, which was already denied as moot by the Court in light of Fuji's Amended Motion.

documents in its possession. Rather, Mr. Rai's declaration only states that Hosiden America had been advised by Hosiden Corporation that it had no documents responsive to the Subpoena. See Rai Declaration, ¶ 7 (Dkt #19).

Such unexamined, second-hand statements are insufficient to comply with Hosiden America's burden to produce documents or to respond that no such documents are in existence. The value of the declaration and statement regarding Hosiden Corporation is particularly suspect because Hosiden America had not even discussed the Subpoena or the scope of Hosiden Corporation's search before unexpectedly hearing from Hosiden Corporation. Hosiden Response, p. 4. Instead, only after Fuji provided Hosiden Corporation with a courtesy copy of the Subpoena, did Hosiden Corporation voluntarily contact its subsidiary, Hosiden America. Id.

**B.** **Hosiden America is in Control of Documents in Hosiden Corporation's Possession**

As Hosiden America concedes in its Response, when determining whether or not a party exercises "control" for document production purposes, "courts ask whether a party has a legal right to obtain the documents requested upon demand; actual physical possession is not required." Flavel v. Cnare, 1993 WL 580831 at *3 (E.D. Wis. 1993) (emphasis added). "The analysis of document production under the Federal Rules of Civil Procedure is subject to a broad approach, as the 'rule is to be liberally, rather than narrowly construed, and its provisions have the force and effect of a statute'." Japan Halon Co. Ltd. v. Great Lakes Chemical Corp., 155 F.R.D. 626, 627 (N.D. Ind. 1993).

**1.** **Japanese Law is Irrelevant**

Hosiden America argues that since Hosiden America and Hosiden Corporation's relationship is "consistent with the laws of Japan," which do not empower subsidiaries to compel documents from parent corporations, Hosiden America should not be viewed to control

3

documents in Hosiden Corporation's possession.  Hosiden Response, pp. 9-10.  Hosiden's Response goes as far as to proffer an opinion of a Japanese Attorney Kazuma Higuchi to show that under Japanese law a subsidiary has no right to inspect its parents documents.  This is irrelevant to the issue at hand -- a red herring -- which clouds the underlying question for the Court, which is whether Hosiden America and Hosiden Corporation have sufficient coordination between them to deem Hosiden America in "control" of the documents possessed by Hosiden Corporation.  Japan Halon, 155 F.R.D. at 628.

In Japan Halon, the defendant Great Lakes sought documents from non-party corporations Onoda Cement and Tosoh, which were the foreign parents of plaintiff Japan Halon. Id. at 626.  Similar to the instant case, Great Lakes requested that the documents "or at least the nonexistence of documents" be confirmed by the non-party foreign parent companies.  Id. at 627. Similar to Hosiden America's argument, Japan Halon argued that it did not have the requisite control over the documents because "Japanese law makes clear that Japan Halon has no right to broadly demand internal documents from Onoda and Tsosh."  Id. at 627.  Japan Halon further argued that discovery under the Federal Rules of Civil Procedure could not be applied until Great Lakes pursued its discovery request through the "traditional letters rogatory procedures described by Japan's Reciprocal Judicial Assistance Act" or alternatively because a certain Japanese corporate structure did not make the directors of the American Subsidiary directors of the foreign parent at the time of their performing acts for the subsidiary.  Id. at 627-8.  The Court granted the motion to compel discovery, finding that "[d]espite what its connection is called in Japan, the relationship between the parent corporations and Japan Halon is sufficiently close to justify enforcing a discovery request."  Id. at 628.

4

Although Hosiden America attempted to distinguish Japan Halon because it revolved around a discovery request under Fed. Rule Civ. Proc. 34(a), which relates to discovery of parties, this Court has found that a non-party is generally subject to the same scope of discovery under Rule 45 as that person would be as a party to whom a request is addressed pursuant to Rule 34. Dexia v. Rogan, 231 F.R.D. 538, 541 (N.D. Ill. 2004). Thus, Japan Halon is applicable here.

In the present action, despite Fuji's earlier reliance on the Japan Halon case, Hosiden America still attempts to obscure the issues of the case by pointing to the relation between Hosiden Corporation and Hosiden America under Japanese law. The Court should find that regardless of their relationship under Japanese law, the relationship between Hosiden America and Hosiden Corporation is sufficiently close to deem the documents of Hosiden Corporation in Hosiden America's control.

### 2.   The Relationship Between Hosiden America and Hosiden Corporation is Sufficiently Close to Find Control

As is discussed in detail in Fuji's Memorandum of Law (Dkt. #22) and in this Reply, courts have enacted a balancing test when determining whether a subsidiary has control over documents that are held by its parent corporation. Flavel, 1993 WL 580831 at *4; Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 129 (D. Del. 1986); In re Uranium Antitrust Litigation, 480 F. Supp. 1138, 1145-53 (N.D. Ill. 1979). While different wording is used in different cases to express this balancing test, the general scope of the balancing test always rests on determining the closeness of the entities.

Hosiden America in the Response cites and relies upon an unpublished decision by this Court (which compelled discovery) that states that the key factual issues in determining control are: 1) the parent's ownership share, 2) whether the corporations have interlocking management

structures and 3) the degree of control exercised by the parent over the subsidiary's directors, officers and employees. Johnson v. Cloos International Inc., 1990 WL 106560 (N.D. Ill. 1990). Even using this version of the balancing test, Hosiden America is in "control" of documents in Hosiden Corporation's possession and should be ordered to either produce such documents or provide one or more employees with first-hand knowledge of the search to testify as to the search and the non-existence of such documents, if that is the case.

In their Response, Hosiden America admits that it is a wholly owned subsidiary Corporation, so this factor undisputedly weighs in favor of finding control. Hosiden Response, p. 8.

As in Johnson (where this Court compelled discovery), Fuji has shown close coordination between the American subsidiary (who was requested to produce documents and information) and the foreign parent (in whose possession such documents were). Johnson, 1990 WL 106560 at *2. As was the case in Johnson, the entities in the instant case share a common President/CEO. Id. Mr. Kenji Furuhashi is the CEO and President of both Hosiden Corporation and Hosiden America. DiBernardo Dec. to Fuji Memorandum of Law (Dkt # 22) at Exh. D and E. Additionally, Mr. Furuhashi is one of only four directors of Hosiden America and is on the board of directors for Hosiden Corporation as well. DiBernardo Dec. to Fuji Memorandum of Law (Dkt # 22) at Exh. D and DiBernardo Dec. at Exh. A. Thus, although Hosiden America argues there is only limited overlap of management, there is interlocking corporate structure at the very top of the management pyramid sufficient to show close coordination between Hosiden America and Hosiden Corporation. Moreover, because Mr. Furuhashi sits at the top of the corporate management structure of both entities and is on both boards of directors, Hosiden America (through Mr. Furuhashi in his capacity at Hosiden America) can request documents from

Hosiden Corporation and such request would be granted by Mr. Furuhashi (in his position at Hosiden Corporation).  Hosiden America has not put forth evidence that Mr. Furuhashi, as CEO, president and director of Hosiden America and Hosiden Corporation, would be unable obtain requested documents.  Indeed, Hosiden Corporation's voluntary search suggests otherwise.  Hosiden Response, p. 4.

Regarding the last element of the test set forth in Johnson, namely whether the parent exercises control over the subsidiary's directors, officers and employees, Hosiden America, argues that because "Mr. Furuhashi lives in Japan" and is not involved in the "day to day management authority over Hosiden America" it cannot be said that Hosiden Corporation exercises control over its wholly owned subsidiary's directors, officers and employees.  Hosiden Response, Exh. E.  This is incorrect.  The courts have not required that the overlapping management's control of the subsidiary be on a day to day basis, rather the test is whether there is close coordination between the two entities.  Id. at *1; Afros, 113 F.R.D. at 129; In re Uranium, 480 F. Supp. at 1151-53.  Personal involvement in day-to-day operations says nothing of control.  CEO's and presidents are at the top of the management control pyramid and thus, by definition, direct others in the day-to-day operation.  Additionally, the courts have not required overlapping managers must live in the United States.  Such a requirement is irrelevant to control.  Such a requirement also is not suggested in any of the four factors and for good reason, as it would ignore the very factual context of the issue at hand – a foreign patent and domestic subsidiary.

Without providing any additional showing, Hosiden America asks this Court to believe that as CEO/President and director (one of only four directors of Hosiden America) of the companies, Mr. Furuhashi has no control over Hosiden America's directors, officers and

employees. Without proof, the Court should dismiss this argument. Balancing the factors, Hosiden America is in control of the documents in Hosiden Corporation's possession and should either have to produce them or produce an employee with first-hand knowledge to testify as to the search and non-existence of responsive documents.

### C. The Subpoena is not Overbroad or Unduly Burdensome

Hosiden America argues that even if Hosiden America is in control of documents in Hosiden Corporation's possession, the Court should not order Hosiden America to produce such documents because the requests are of such a "Brobdingnagian proportion" and are unduly burdensome. Hosiden Response, pp. 10-11. This argument is belied by the facts and Hosiden America's actions in responding to this Subpoena. As detailed in the Background Section of Fuji's Memorandum of Law (Dkt. # 22; pp. 4-5), Fuji has at all points in the process of serving the Subpoena and its subsequent enforcement tried to alleviate the burden on Hosiden America and reach a compromise position that would limit the burden on Hosiden America and still result in admissible evidence for Fuji to introduce in the Underlying Case.

The Subpoena itself was drafted in such a way that the requests are bounded both as to specific subject matter of the materials requested and the specific timeframe of the requested materials. All requests in the Subpoena refer to producing materials that relate to "liquid crystal displays, LCD modules or components" specifically or to the specific project for which Hosiden provided services to Honeywell and request documents only from a specific, bounded timeframe (i.e., 1988-1994).[2]

---

[2] When Fuji received Hosiden's objections to the scope of the Subpoena, Fuji's counsel offered to limit the scope of the Subpoena both in documents requested and time frame that it covered. When Hosiden America still refused to perform a narrower search of the documents in Hosiden Corporation's possession, Fuji was forced to bring its Motion to Enforce.

Hosiden America and Hosiden Corporation's actions both since the Subpoena was served and since the Motion to Enforce was filed with this Court disprove Hosiden America's argument that they cannot comply with the Subpoena because it is overly broad and burdensome. More specifically, the declaration of Soichiro Rai and Hosiden America's recent assertions contradict the fact that the Subpoena is overly burdensome. According to Mr. Rai's declaration, a diligent search of Hosiden America's documents was performed and no responsive documents to the Subpoena were found. See Rai Declaration, (Dkt # 19). Thus, Mr. Rai attests that he was able to search through all of the categories of documents in Hosiden America's possession that would be responsive to the Subpoena in a short period of time and does not claim as argued in the Hosiden Response that such search was overly burdensome. Similarly, Mr. Rai claims in his declaration that he was advised by Hosiden Corporation that they too had performed such a search and found no documents in their possession exist either. The Response states that this notification came from Hosiden Corporation after Hosiden Corporation had received the courtesy copy of the Motion that Fuji mailed to Japan, which was less than two weeks before the date of the Rai declaration. Id. Thus, if the person who notified Mr. Rai is to be believed, Hosiden Corporation was able to search all their records for the documents sought by the Subpoena.[3] Thus, the scope of the Subpoena is not unduly burdensome, and Court should not grant Hosiden America's request to quash the Subpoena.

---

[3] As the Response points out, Fuji has never directly questioned whether the search performed by Hosiden America or Hosiden Corporation was sufficient, this is because Fuji has no first-hand knowledge to question the validity of such a search one way or the other. Rather that is part of the relief Fuji is requesting through the instant motion and through Fuji's counsel's repeated requests to Hosiden America's counsel to identify one or more employees with first-hand knowledge of the search to submit to a deposition stating that the search was performed and such documents do not exist or were destroyed.

9

**D.        Honeywell's Last Minute Memorandum Regarding Motion**

On December 14, 2007, Honeywell International Inc., and Honeywell Intellectual Properties Inc. (collectively "Honeywell"), submitted to the Court a "Memorandum Regarding Fuji's Motion to Enforce." ("Honeywell Memorandum"; Dkt # 27) Honeywell's standing to submit such a memorandum is clearly suspect. Gripper v. City of Springfield, 2006 U.S. Dist. LEXIS 29058, 3-4 (C.D. Ill. 2006) (denying motion to quash and stating that a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some right or privilege with regard to the documents sought); Biedrzycki v. Town of Cicero, 2005 U.S. Dist. LEXIS 16423, 8-10 (N.D. Ill. 2005) (denying motion to quash by stating that defendants do not have standing to argue against compliance with a subpoena on grounds of an argument that the subpoenaed party did not raise);  Duncan v. Northern Alaska Carpenters Retirement Fund, 1991 U.S. Dist. LEXIS 4269 (D. Wash. 1991) (granting motion to enforce subpoena and noting that defendants do not have standing to contest the compulsory process of the district court since they are not in possession of the materials subpoenaed and because they have not alleged any personal right with respect to the materials subpoenaed); Hunt Int'l Resources Corp. v. Binstein, 98 F.R.D. 689, 690 (N.D. Ill. 1983) (denying motion to quash and stating that unless a party can demonstrate a personal right or privilege with respect to the subject matter of the deposition, the party to the action lacks standing to halt the deposition). Even though Honeywell's standing to submit a memorandum in the present case is suspect, for the benefit of the Court, Fuji responds to the points raised in the Honeywell Memorandum.

First it is important to note that Honeywell has <u>not</u> objected to the Subpoena, nor taken the position before this Court (even in the Honeywell Memorandum) that the Subpoena should not be enforced or that Hosiden America should not be required to comply with the Subpoena.

The Honeywell Memorandum proffers that Honeywell produced its first set of documents to Fuji that referenced Hosiden Corporation on August 16, 2006. Honeywell Memorandum at pp. 1-2. While Fuji may have known of Hosiden Corporation as early as August 2006, prior to serving Hosiden America with the Subpoena, Fuji first sought the requested documents from the Honeywell parties and took numerous depositions to uncover the relationship between Honeywell and Hosiden. Only after discovery of Honeywell proved limited on the requested topics, did Fuji seek discovery from Hosiden America. For Honeywell to now imply to the Court that the Subpoena is somehow "late" because Fuji knew of Hosiden is disingenuous.

The Honeywell Memorandum asserts (without any declarations to support such assertions) that all of Honeywell's relations were with Hosiden Corporation and not Hosiden America. That point in and of itself (even if true) is irrelevant to the question of "control" as discussed *supra*.

The Honeywell Memorandum submits that Honeywell could not agree to the stipulation proposed by Fuji (DiBernardo Dec. to Fuji Memorandum of Law Exh. J) because Honeywell could not stipulate to facts of which Honeywell did not have personal knowledge. As discussed in the Background section of Fuji's Memorandum of Law, (pg. 6) Fuji offered the stipulation to Honeywell as a way to reduce the burden on Hosiden America and this Court and Honeywell refused. Fuji's Memorandum of Law, p. 6. Honeywell concedes that they did not offer a counter proposal of a stipulation they were willing to agree to. Honeywell Memorandum, p. 2.

The Honeywell Memorandum notes that Fuji has required Honeywell to follow rules for obtaining discovery from Japanese individuals and entities. The implication by this argument is that Fuji should somehow be required to seek documents directly from Hosiden Corporation. As discussed *supra* the documents requested are in Hosiden America's "control" and therefore there

is no need to go through the international process of subpoenaing the documents directly in Japan. It should be noted that although Honeywell was required to travel to Japan to take certain depositions, Fuji did produce documents from Fuji Japan and certain of its Japanese witnesses in both Japan and the United States and produced the employees of the Fuji United States subsidiary in the United States.

Thus even if Honeywell had standing to submit its memorandum, the points raised are either irrelevant or inconclusive to the issues before this Court.

## **Conclusion**

For the foregoing reasons, Fuji respectfully requests that this Court issue an Order requiring Hosiden America (i) to undertake a search, both at Hosiden America and Hosiden Corporation, for and produce, within a reasonable time, all documents responsive to the Subpoena; (ii) if no such documents exist, produce one or more employees with first-hand knowledge of such search and non-existence of documents to submit to a deposition on the subject; (iii) to pay Fuji's reasonable fees and costs incurred in bringing this Motion; and (iv) for such other and further relief as the Court may deem just and proper.

**DATED: December 17, 2007**               Respectfully submitted,

                                           FUJIFILM CORPORATION


                                           ____s/ Ian G. DiBernardo____


Attorneys for FUJIFILM Corporation
Lawrence Rosenthal
Ian G. DiBernardo
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
212-806-5763

Matthew A. Werber
George H. Gerstman
Seyfarth Shaw LLP
131 S. Dearborn
Suite 2400
Chicago, IL 60603
312-460-5000

**CERTIFICATE OF SERVICE**

I, Matthew A. Werber, an attorney, certify that I caused the foregoing *FUJIFILM CORPORATION'S REPLY TO HOSIDEN AMERICA CORPORATION'S RESPONSE IN OPPOSITION TO AMENDED MOTION TO ENFORCE RULE 45 SUBPOENA AGAINST NON-PARTY HOSIDEN AMERICA CORPORATION*, Declaration of Ian G. DiBernardo, Esq., and exhibit(s) annexed thereto to be: (1) filed electronically with the Clerk of the Court for the Northern District of Illinois using the Court's Electronic Case Filing System, which will send notification to the registered participants of the ECF System as listed in the Court's Notice of Electronic Filing; and (2) served via electronic mail on this 17th day of December, 2007.

**By E-Mail:**
Matthew L. Woods [MLWoods@rkmc.com].
Stacie E. Oberts [SEOberts@rkmc.com]
Peter N. Surdo [PNSurdo@rkmc.com]
ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
*Attorney for Honeywell International Inc. and Honeywell Intellectual Properties Inc.*

Richard D. Kelly [rkelly@oblon.com]
Andrew M. Ollis [AOllis@Oblon.com]
John Prepser [JPresper@Oblon.com]
OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT P.C.
1940 Duke Street
Alexandria, VA 22314
*Attorney for Optrex America Inc.*

Elizabeth L. Brann [elizabethbrann@paulhastings.com]
Martin R. Bader [martinbader@paulhastings.com]
PAUL HASTINGS JANOFSKY & WALKER LLP
3579 Valley Centre Drive
San Diego, CA 92130
*Attorney for Samsung SDI America, Inc. and Samsung SDI Co., Ltd.*

David H. Ben-Meir [dhben-meir@hhlaw.com]
Stuart Lubitz [slubitz@hhlaw.com]
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067-6047
*Attorney for Citizen Watch Co., Ltd., and Citizen Displays Co., Ltd*

                                                      s/Matthew A. Werber
                                        Matthew A. Werber
                                        SEYFARTH SHAW LLP
                                        131 South Dearborn Street, Suite 2400
                                        Chicago, Illinois 60603
                                        Telephone: (312) 460-5000
                                        Facsimile: (312) 460-7000
                                        e-mail: mwerber@seyfarth.com