**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| IN RE: SUBPOENA TO HOSIDEN AMERICA CORPORATION | ) ) ) | Case Number 07-cv-6458 |
| | ) | Judge Ruben Castillo |
| HONEYWELL INTERNATIONAL, INC., et al., | ) ) | Magistrate Judge Schenkier |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| APPLE COMPUTER, et al., | ) ) | |
| Defendants | ) | |

**<u>COPY OF UNPUBLISHED OPINION CITED IN</u>**

**<u>FUJIFILM CORPORATION'S OPENING MEMORANDUM OF LAW</u>**

**<u>(DOC # 22)</u>**



Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 580831 (E.D.Wis.), 63 Fair Empl.Prac.Cas. (BNA) 1199, 64 Empl. Prac. Dec. P 43,027
(Cite as: 1993 WL 580831 (E.D.Wis.))

Page 1

H
United States District Court, E.D. Wisconsin.
Malcolm D. FLAVEL, individually and on behalf of all other persons similarly situated, Representative Plaintiff,
and
Robert F. Cnare, James R. Conradt, Major Coxhill, Robert K. Elbel, Malcolm D. Flavel, Russell H. Graf, Robert L. Isferding, Robert E. Jones, Chalasani C. Rayan, Richard Spoonamore and Ronald J. Weiss, Plaintiffs,
and
Equal Employment Opportunity Commission, Plaintiff-Intervenor,
v.
SVEDALA INDUSTRIES, INC., f/k/a Boliden Allis, Inc.; Svedala, Inc.; Allis Mineral Systems; and Mineral Processing Systems, Inc.; Defendants.
No. 92-C-1095.

Dec. 13, 1993.
Stephen Snyder, Laurie A Knocke, Winthrop & Weinstine, P.A., St. Paul, MN, for plaintiffs.

Brian C. Tyndall, Lloyd B. Zimmerman, U.S. E.E.O.C., Milwaukee, WI, for plaintiff-intervenor.

David Loeffler, Marty R. Howard, Krukowski & Costello, S.C., Milwaukee, WI, for defendants.

*MEMORANDUM AND ORDER*

WARREN, Senior District Judge.

*1 Before the Court is the plaintiffs' Motion to Compel the Discovery of Documents Within the Physical Possession of Svedala Industry, A.B. and/or Svedala International in the above-captioned matter. For the following reasons, this motion is granted.

I. *FACTUAL AND PROCEDURAL BACKGROUND*
On January 1, 1988, Boliden AB, a Swedish company owned by Trelleborg AB, another Swedish company, assumed ownership of several units of Allis-Chalmers Corp., a U.S. company, including its crushing and screening production facility in Appleton, Wisconsin, and its "pyroprocessing" and grinding mill production facility in Milwaukee, Wisconsin. (Plaintiff's July 2, 1993 Letter Brief at 2-3.) These units, along with related businesses owned or controlled by Boliden AB, were renamed Boliden-Allis, Inc., and were included in the company's newly-formed "Minerals Processing Business Area" in 1989. *Id.* at 3. In January, 1990, Trelleborg AB changed the company's corporate structure, (1) transforming the "Minerals Processing Business Area" into Svedala Industry AB ("SIAB"), a Swedish company; (2) renaming Boliden-Allis' remaining operations "Allis Mineral Systems," which became a wholly-owned business unit of SIAB; (3) forming Svedala Industries ("Svedala"), a U.S. company, as a "special unit" of SIAB, and (4) creating Svedala, Inc. ("SI"), a U.S. company, as a holding company for Svedala Industries. *Id.* at 6. Svedala International ("MINCO") [FN1] , a Swedish company formerly known as MINCO International, is also a subsidiary of SIAB. *Id.* at 1-2.

Malcolm D. Flavel was hired by Allis-Chalmers in 1961 as a factory representative, and was promoted to the level of Consultant-Comminution Systems in 1983. (Complaint ¶ 17.) On October 17, 1990, at the age of 54, Mr. Flavel was terminated from employment at the Appleton plant. *Id.* at ¶ 18-19. Robert E. Jones was hired by Allis-Chalmers in 1955 as an Application Specialist, and was promoted to the level of Senior Project Application Engineer in 1979. *Id.* at ¶ 21. On May 31, 1991, at the age of 60, Mr. Jones resigned from employment at the Appleton plant. *Id.* at ¶ 23-24. Mr. Flavel and Mr. Jones both filed timely complaints with the Equal Employment Opportunity Commission ("EEOC"), alleging that Svedala discriminated against them on the basis of age. *Id.* at ¶ 11-12. On September 30, 1992, the EEOC issued a Letter of Violation, finding (1) that Svedala "discriminated against [Mr. Flavel] and a class of protected age group employees on the basis of age with respect to evaluations, terms and conditions of employment, demotion, and termination;" and (2) that Mr. Jones "was subjected

to harassment by his manager with considerable frequency, that [Mr. Jones] complained to others about this, and that others complained to the manager about his abusive behavior; [that] younger co-workers were not harassed with the same degree and frequency, [and that witnesses observed] connections between the manager's behavior towards his employees and the employee's age, [with] preference being extended to younger staff members." Id. at ¶ 14, 22.

*2 On October 16, 1992, the plaintiffs brought the above-captioned matter as a representative action, claiming violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq., and seeking declaratory relief and damages under state common law; thus far, eleven (11) private plaintiffs have joined this suit. [FN2] After an extension was granted by the Court, the defendants filed an Answer on November 25, 1992, which was amended on December 4, 1992. On July 13, 1993, this Court issued an Order allowing the EEOC to intervene as a plaintiff in this action.

Regrettably, discovery in this case has been punctuated by numerous disputes, requiring several dispositive rulings by this Court. In the instant motion, which was originally brought on February 22, 1993, the plaintiffs seek from the defendants the production of documents which are held by foreign entities SIAB and MINCO. At a June 21, 1993 hearing resolving other discovery disputes, which was memorialized in a July 22, 1993 Order, we directed the parties to submit to the Court letter briefs regarding the instant motion. The plaintiffs submitted their letter brief on July 2, 1993, with an addendum on September 10, 1993; the defendants submitted their letter brief on July 9, 1993, with an addendum on July 12, 1993.

II. DISCUSSION
A. PARTIES' ARGUMENTS

The plaintiffs argue that, at all times subsequent to the Allis-Chalmers buyout, Swedish managers at SIAB and its predecessors maintained "direct and primary management authority over [the] U.S. businesses." (Plaintiffs' July 2, 1993 Letter Brief at 3-4.) They emphasize that these managers "were, and continue to be, actively involved in making decisions directly affecting the operations and personnel in the Appleton and Milwaukee facilities ... [including] directly participating in key hiring and employment decisions for the U.S. operations ... reviewing the performance of U.S. employees of Svedala ... [and making] decisions concerning the restructuring or reorganization of the Appleton and Milwaukee businesses." Id. at 4-5, 7. The plaintiffs note that "two of the three board members for [Svedala and SI] are Swedish officers of the parent company [SIAB] ... [while] only one member of the board of Svedala and SI is an American," and that MINCO, who employed one of the plaintiffs at the time of his termination, circulated a "blatantly ageist notice of a job opening" at the Appleton facility. Id. at 6-7. The plaintiffs argue that such facts prove that Svedala and SI have the requisite "control" pursuant to Rule 34(a) over the requested documents held by SIAB and MINCO because (1) a "close corporate relationship" exists between the foreign parents and American subsidiaries because they have close managerial connections, interlocking management structures, and the parent company has a significant ownership share of the subsidiary; or (2) the "consolidated enterprise" or "integrated enterprise" doctrine under Title VII and the ADEA is met because the foreign parents and American subsidiaries share an interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. Id. at 8-12.

*3 The defendants, in turn, claim that, because SIAB and MINCO are not named as defendants in this suit, Svedala and SI "are obliged to produce documents now sitting in Sweden only if all the corporations are alter egos under the corporate model enacted into law in Section 4(h)(3)(A) through (D) of the ADEA," which requires that corporations share (1) an interrelation of operations; (2) common management, (3) centralized control of labor relations; and (4) common ownership or financial control. (Defendants' July 9, 1993 Letter Brief at 3-5.) While acknowledging that this provision only governs liability under the ADEA, and not discovery, the defendants argue that it creates a " 'substantive right' within the meaning of 28 U.S.C. § 2072(b), which cannot be abridged or modified through the application of any of the discovery rules." Id. at 5. They argue that "the American and Swedish corporations are not alter egos however, because [Svedala] and [SI] pursue 'labor relations' or employment policies without any 'centralized' direction or control from [SIAB] or [MINCO] ... the managements of the Swedish and American companies are not 'common' ... and the production and sales operations of the American and Swedish companies are largely independent of one another

Case 1:07-cv-06458    Document 30    Filed 12/17/2007    Page 4 of 6

Not Reported in F.Supp.                                                                 Page 3
Not Reported in F.Supp., 1993 WL 580831 (E.D.Wis.), 63 Fair Empl.Prac.Cas. (BNA) 1199, 64 Empl. Prac. Dec. P 43,027
(Cite as: 1993 WL 580831 (E.D.Wis.))

and not integrated in a continuous flow. *Id.* at 5-6. Specifically, "at the level of employment relevant to this litigation--managers below the level of facility General Manager and professional/technical support staff--the employment decisions of Svedala are not central[ly] controlled from Sweden." (Defendants' July 12, 1993 Addendum to Letter Brief at 2.) Thus, the defendants claim that the companies "have totally different senior management ... [and] Svedala runs its own employment regime independent of any direction from SIAB, except a broad directive to conform to U.S. law." (Defendants' July 9, 1993 Letter Brief at 8-10.)

B. *LEGAL STANDARD*

Document production in discovery is governed by Rule 34(a), which reads as follows:

"Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents, ... or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) *and which are in the possession, custody or control of the party upon whom the request is served ...*"

By using the word "or," Rule 34(a) makes a clear distinction among the meanings of "possession," "custody," and "control." In determining whether or not a party exercises "control," courts ask whether a party has a legal right to obtain the documents requested upon demand; actual physical possession is not required. *Burton Mechanical Contractors, Inc., v. Foreman*, 148 F.R.D. 230, 236 (N.D.Ind.1992); *Henderson v. Zurn Indus., Inc.*, 131 F.R.D. 560, 567 (S.D.Ind.1990) (citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir.1984)); *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 (N.D.Ill.1977). The party seeking document production bears the burden of establishing the opposing party's control over such documents. *Burton*, 148 F.R.D. at 236.

*4 The plaintiffs properly note that, in determining whether a U.S.- domestic corporation must produce documents in possession of a foreign parent or affiliate, courts have focused on whether the U.S. corporation has the requisite degree of control over the documents sought. *See, e.g., Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129 (D.Del.1986); *In re Uranium Antitrust Litigation*, 480 F.Supp. 1138, 1145-53 (N.D.Ill.1979). In deciding whether a subsidiary has "control" over documents held by its parent corporation, courts focus on the closeness of the relationship between the entities. *See, e.g., Johnson v. Cloos Int'l., Inc.*, 1990 WL 106560, at *1- 2 (N.D.Ill.1990); *Afros*, 113 F.R.D. at 129-31; *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y.1984). If the requisite degree of closeness is found, domestic corporations may be required to produce documents in the possession of foreign parents or affiliates, even though the latter are not subject to the personal jurisdiction of the court. *Cloos*, 1990 WL 106560, at 1-2; *Afros*, 113 F.R.D. at 131; *In re Uranium*, 480 F.Supp. at 1145-53.

C. *ANALYSIS*

In their letter brief, the defendants mistakingly assume that the "*alter ego* " doctrine [FN3] embodied in Section 4(h)(3) of the ADEA dictates resolution of the "control" issue under Rule 34(a). Section 4(h)(3), however, is a *liability* provision, and it is clear that a party may exercise the requisite degree of "control" over documents held by a related entity under the discovery rules without exhibiting the degree of interrelationship necessary to project liability upon such entity pursuant to the ADEA. The degree of relationship between a domestic subsidiary and a foreign parent required to subject the latter to liability under the ADEA is certainly greater than that needed to subject the latter to document production through the former. This does not, as the defendants assert, violate 28 U.S.C. § 2072(b), [FN4] because the "substantive right" created under Sections 4(h)(1-3) of the ADEA, the inclusion or exclusion of liability for SIAB and MINCO, [FN5] is not implicated simply because such entities may be required to produce documents through Svedala and SI pursuant to Rule 34(a). A domestic subsidiary, then, may be required to produce documents held by a foreign parent, even though that parent is not covered by the provisions of the ADEA, so long as that subsidiary "controls" such documents as defined under Rule 34(a). [FN6]

The Court is satisfied that the defendants so "control" the requested documents held by SIAB and, derivatively, MINCO. As previously noted, in spirit with the current policy of permissive discovery, a party is generally considered to have "control" over documents under Rule 34(a) if it can likely obtain such documents upon demand. Thus, under the Rule 34(a) control analysis employed in *Afros S.P.A.* and its progeny, a sufficiently close corporate relationship exists between a domestic subsidiary and a foreign

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 580831 (E.D.Wis.), 63 Fair Empl.Prac.Cas. (BNA) 1199, 64 Empl. Prac. Dec. P 43,027  
(Cite as: 1993 WL 580831 (E.D.Wis.))

Page 4

parent to compel the former to produce documents held by the latter if their degree of interrelation is evidenced by (1) adequate ownership share in the subsidiary by the parent; (2) interlocking management structures; (3) sufficient control exercised by the foreign parent over the subsidiary's directors, officers, and employees; and/or (4) a "connection to the transaction" at issue. Consideration of such factors promotes the policies underlying Rule 34(a) and ensures that a corporation cannot "hide" incriminating documents overseas; and, because none of these factors acts as an exclusive test, each factor need not be satisfied to prove the existence of Rule 34(a) "control."

*5 Nobody disputes that SIAB owns 100% of Svedala through its holding company, SI. Nor can it be seriously disputed that SIAB has traditionally maintained interlocking management structures with SI and Svedala. As noted by the plaintiffs, and as indicated in the defendants' exhibits, Thomas Older, the President, CEO, and Board member of SIAB, and Jan Knutsson, an Executive Vice President of SIAB, are currently acting as two of the three directors of Svedala, and Mr. Knutsson is also the Manager of Allis Mineral Systems. In addition, Mr. Older and Sven Ek, another Executive Vice President of SIAB, are currently acting as two of the three directors of SI. Clearly, this degree of interrelationship between directors of domestic subsidiaries and officers of a foreign parent sufficiently demonstrates the requisite "corporate closeness" required under this branch of the Rule 34(a) control analysis. In light of this, the defendants argument that SIAB lacks "interlocking management" with SI and Svedala simply because they do not share common directors or common officers is clearly disingenuous.

It also appears that SIAB exercised the requisite degree of control over the management of Svedala and SI regarding employment policies and decisions to justify the plaintiffs' document production request. The defendants concede that officers of SIAB "have the final say" on "key management personnel" decisions, including performance reviews, down to the level of General Managers of operating facilities. The plaintiffs, in turn, charge that several of these handpicked managers "had an active role" in at least several of their terminations, and "set the tone" for employment practices throughout Svedala and SI. This Court is satisfied that SIAB exhibited sufficient control over the hiring and review of upper and mid-level managers to bring the requested documents within the control of SI and Svedala pursuant to Rule 34(a). The plaintiffs have demonstrated that the motives behind employment decisions by SI and Svedala may be exhibited in documents held by SIAB, and have shown that, given the corporations' close relationship, such documents are available to the domestic corporations upon request. In addition, as previously noted, it is clear that our decision has no bearing on the *liability* of SIAB or MINCO for any allegedly unlawful acts; [FN7] therefore, the defendants' concerns as to our flaunting conventional notions of unlimited liability through incorporation are unwarranted. As a result, SI and Svedala will be required to produce the documents requested by the plaintiff which are held by SIAB pursuant to Rule 34(a).

Finally, because MINCO falls within the penumbra of the domestic subsidiaries' "close relationship" with SIAB, documents held by it are also discoverable by the plaintiffs. As previously noted, MINCO is a foreign, wholly-owned subsidiary of SIAB; and because, *inter alia,* MINCO's manager, Peter Kohle, is an Executive Vice President of SIAB, it appears that these corporations have interlocking management. In addition, the defendants have not challenged the plaintiff's assertion that MINCO directly employed at least one of the plaintiffs. Finally, based on the letter briefs submitted by the parties, the Court reasonably intimates that SIAB manages the operations of MINCO in the same manner as it does SI and Svedala; thus, SIAB clearly controls documents held by MINCO as defined under Rule 34(a). As a result, such documents, if relevant, are discoverable by the plaintiffs through Rule 34(a) as accessible through SIAB. [FN8]

### III. SUMMARY

*6 For the foregoing reasons, the Court hereby ORDERS that the plaintiffs' motion to compel documents in the above-referenced matter be GRANTED.

SO ORDERED.

> FN1. For the sake of clarity, Svedala International will be referred to by its previous name, MINCO.
>
> FN2. On February 25, 1993, the Court signed a stipulated order that consolidated *Weiss v. Boliden-Allis, Inc.,* Case No. 91-C-493, with the instant case. Normally, pursuant to Local Rule 4.03, "[i]f the motion is granted, the judge to whom the lowest

numbered case is assigned shall handle all future proceedings covered by the consolidation order. When two or more cases are consolidated, all documents relevant to the purposes for which consolidation was granted will thenceforth be docketed only on the docket sheet for the lowest numbered of the consolidated cases." In this case, however, while the cases were consolidated into the lower-numbered case on the docket sheet, they were consolidated into the higher-numbered case in the court file. Because both cases were originally assigned to this Court, this oversight has not caused any significant administrative difficulties; it did, however, precipitate a filing error which resulted in a significant delay in processing the instant motion. To eliminate any further confusion, the Court hereby requests that, despite Local Rule 4.03, the parties use the higher-case number, 91-C-1095, in the caption of any subsequent filings in this case.

FN3. In their letter brief, the plaintiffs term this the "consolidated enterprise" or "integrated enterprise" liability doctrine under the ADEA.

FN4. 28 U.S.C. § 2072(b) reads as follows: "Such rules [the Federal Rules of Civil Procedure] shall not abridge, enlarge or modify any substantive right."

FN5. Clearly, Section 4(h)(3) of the ADEA does not grant the defendants any substantive right to be free from the rules of discovery.

FN6. The Court expresses no opinion as to whether SIAB or MINCO are sufficiently interrelated with SI and Svedala to implicate the liability provisions of the ADEA.

FN7. *See supra* pages 9-10.

FN8. The Court notes, however, that documents held by MINCO are generally less likely to be relevant to the instant matter than those held by SIAB, a more proximate relative to the plaintiffs than MINCO.

Not Reported in F.Supp., 1993 WL 580831 (E.D.Wis.), 63 Fair Empl.Prac.Cas. (BNA) 1199, 64 Empl. Prac. Dec. P 43,027

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.